UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER ROSE

        Plaintiff,

   v.

UNITED STATES OF AMERICA et al.,

        Defendants.

Case : 1 :07-cv-00926 (RWR)
Hon. Richard W. Roberts

**OPPOSITION TO FEDERAL DEFENDANTS'
MOTION UNDER RULES 12(B)(1) AND 12(B)(6) TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM**

COMES NOW the Plaintiff, Peter Rose, by and through undersigned counsel, and in support of his above-entitled opposition, states as follows:

**This Court Has Subject Matter Jurisdiction;
The Rooker Feldman Doctrine Does Not Apply**

1. The Federal Defendants wrongly contend that this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine, which doctrine provides that "federal district courts lack jurisdiction to review judicial decisions by state and District of Columbia courts." Fed. Motion at p. 10.[1] This Court does have jurisdiction because what is *not* being litigated in the present lawsuit is whether the D.C. court correctly determined whether Mr. Rose met the burden of proving actual innocence by clear and convincing evidence. Rather, the instant lawsuit challenges whether it was lawful to require Mr. Rose to have to prove his innocence at all.

2. If Mr. Rose were claiming that the D.C. Superior Court acted arbitrarily or capriciously in its application of Criminal Rule 118, the Rooker-Feldman doctrine might come into play. However, Mr. Rose is challenging Criminal Rule 118 itself, rather than its application by the D.C. Superior court to his specific arrest. Such general attacks on the Constitutionality of a District of Columbia rule are clearly outside the scope of the Rooker-Feldman doctrine, because they are not challenging a judicial decision, but are instead challenging a legislative rule. *See District of Columbia v. Feldman*, 460 U.S. 462, 487 – 488  (1983) (where plaintiffs' federal

BERNARD A. SOLNIK

ATTORNEY AT LAW
SUITE 640
11 N. WASHINGTON ST.
ROCKVILLE, MD 20850

TELEPHONE 301-294-9200

---

[1] The "Federal Defendants' Motion Under Rules 12(B)(1) And 12(B)(6) To Dismiss For Lack Of Subject Matter Jurisdiction And For Failure To State A Claim" is cited to herein as the "Fed. Motion."

district court complaints mount a general challenge to the constitutionality of a D.C. court rule and seek review of the D.C. court's application of the rule to their specific circumstances, the U.S District Court has subject matter jurisdiction over the general challenge, even though it does not have jurisdiction to entertain those portions of the complaints seeking review of the D.C. court's decision applying the rule).

## Plaintiff is Not Barred by Res Judicata

3. Contrary to the Federal Defendants' contention, res judicata does not apply here. Plaintiff lacked standing to challenge the Constitutionality and validity of Criminal Rule 118 in the D.C. court proceedings, because as of that juncture his request to have his arrest record sealed had not been denied. Thus, Mr. Rose had not sustained sufficient damages upon which to have standing to challenge Criminal Rule 118's constitutionality at that time. Plaintiff's motions and hearings in the D.C. Courts were Plaintiff's diligent efforts to obtain appropriate relief before reaching the point of having to make a Constitutional challenge. Since prior to exhausting these remedies, the possibility of Plaintiff's arrest record being sealed was alive and well under Criminal Rule 118, Plaintiff at that time lacked actual damages arising from the application of the statute, and his Constitutional challenge would have been dismissed for lack of ripeness.[2]

4. In res judicata parlance, no "issue preclusion" exists because the issue of the Constitutionality of the statute has never before been addressed in Mr. Roses' case. It was only raised for the first time after Mr. Rose's appeal to the D.C. Court of Appeals was denied, when Mr. Rose filed a petition for rehearing by the D.C. Court of Appeals ("Appellant's Petition for Rehearing By the Division or for Rehearing En Banc"), at which point it arguably was still not ripe. In any event, Plaintiff's petition for rehearing was denied without being considered on the merits.

5. No "claim preclusion" exists because the claim arose only upon the D.C. Court of Appeals' denial of Mr. Roses' appeal. Thus, the present lawsuit is the first time Mr. Rose has filed suit on the facts from which his Constitutional damage arose – those facts being the denial under Criminal Rule 118 of Mr. Rose's request to have his record sealed.

## Plaintiff Has Been Deprived of Life, Liberty, Property and Other Constitutionally Protected Interests

BERNARD A. SOLNIK
ATTORNEY AT LAW
SUITE 640
11 N. WASHINGTON ST.
ROCKVILLE, MD 20850

TELEPHONE 301-294-9200

---

[2] In jurisdictional parlance, Mr. Rose's Constitutional claims were at that juncture premature under the doctrines of ripeness, mootness, exhaustion of remedies, standing, case-or-controversy and/or advisory opinions.

6.  Contrary to the Federal Defendants' contentions, the Plaintiff sufficiently alleges deprivation of constitutionally protected life, liberty, and property rights.[3]  The Federal Defendants insensitively and naively trivialize the adverse impacts described in Mr. Rose's Complaint as nothing more than "sundry embarrassments and inconveniences."  However, there is nothing trivial about Mr. Rose's top-secret security clearance, which is a very important part of his job, having not been granted solely because of the records of the subject arrest.  *See* Affidavit Of Peter J. Rose In Support Of Opposition To Defendant District Of Columbia's Motion To Dismiss, Or, In The Alternative, Motion For Summary Judgment ("Rose Affid.").  Likewise, while his job should entail meeting with the U.S. President, as alleged in the Complaint, this access has also been denied solely because of the records of the subject arrest.  *Id.*  Moreover, in the highly competitive consulting industry in which Mr. Rose works, as alleged in the Complaint, the denial of access to important Government officials; the embarrassment he has suffered; the avoiding of lucrative and beneficial business meetings and opportunities so as to avoid future embarrassment; and the being restricted in his ability to travel; all significantly impact Mr. Rose's ability to perform his job, earn income, advance his career, and enjoy his rightful life and liberty. *Id.*[4]

---

[3] While the Complaint specifically references the Fifth Amendment, the Complaint also clearly states that it is being brought pursuant to any and all applicable portions of the Constitution. *See, e.g.,* Complaint, par. 4, alleging that the action is pursuant "to the U.S. Constitution, and in particular, the Fifth Amendment thereto."  Thus, for example, the Complaint also sues for violations of the 14th Amendment, which Amendment provides that
> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

In this regard, it is noted that since Rule 118 both in form and in practice permits some persons whose cases were terminated without conviction to seal their records, while not permitting others, it violates Mr. Rose's right to equal protection.  As also explained in the Complaint and body of this Opposition, in that Mr. Roses' life, liberty or property and freedom from fear and delay in traveling have been limited, other portions of the 14th Amendment are also violated by Criminal Rule 118.  Likewise, Criminal Rule 118 may violate the 8th Amendment's proscriptions on excessive fines and cruel and unusual punishment since the effect of not sealing the arrestee's is in effect a penalty; and the 10 Amendment which limits the Government's powers outside of law enforcement which law enforcement is conducted under due process of law.

[4] Even in the absence of any specific example of the adverse impact of an arrest record on an arrestee's life, liberty and property rights, a grossly adverse impact presumptively exists, as was found by the Committee on the Judiciary of the D.C. Council, who recently wrote that "An arrest record alone has considerable potential for adverse consequences in the areas of private employment, government employment, governmental housing, admission to the military, and the acquisition of credit…Even a minor conviction can have consequences **creating a de facto sentence without the possibility of parole**."  D.C. Council, Comm. On the Judiciary, Rep. On Bill 16-746, the Crim. Rec. Sealing Act of 2006, 16th Period, at 1 (D.C. 2006). (*quoting* Expungement Subcomm., Council for Court Excellence Apr. 14, 2006 Rep. (D.C. 2006) (emphasis added).   The Committee went so far as to state that "[t]he District has a responsibility to engage in the meaningful rehabilitation of its citizens," but "[t]oo often, the stigma of a criminal record outweighs any rehabilitative efforts by the individual or the unique circumstances of their case."

BERNARD A. SOLNIK

ATTORNEY AT LAW
SUITE 640
11 N. WASHINGTON ST.
ROCKVILLE, MD 20850

TELEPHONE 301-294-9200

3

7. As the Federal Defendants acknowledge in their own descriptions of the cases they cite on this issue, applicable caselaw merely holds that injury to reputation "*standing alone*" may not constitute a Constitutional deprivation. *See* Fed. Mot. at 14 – 15. However, as noted in *Dawkins v. U.S.* in the context of issues relating to the sealing of arrest records, as well as in a myriad of other cases (*see, e.g. Siegert v. Gilley*, 111 S. Ct. 1789, and the many cases cited in the Marshall dissent therein,) an individual's Constitutional liberty and property rights *are* implicated where injury to reputation is accompanied by injury to tangible interests. 535 A.2d 1383, 1386 at n. 3 (D.C. 1988) ("The Supreme Court has held that its prior cases do 'not establish the proposition that reputation alone, *apart from some more tangible interests such as employment*, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause.' *Paul v. Davis,* 424 U.S. 693, 701, 96 S. Ct. 1155, 1161, 47 L.Ed.2d 405 (1976)") (*emphasis added*).

8. In sum, Mr. Rose has worked over many years to acquire these hard-earned things that have now been wrongfully taken from him as a result of an arrest for which he never was convicted.

**Plaintiff Has Not Been Afforded Adequate Due Process**

9. The Federal Defendants next argue that because Mr. Rose was given a hearing on his motion to seal his arrest record, he was afforded adequate due process.

10. As was explained in great depth in the Rose Affid., from the time of Mr. Rose's arrest onward, the Government never could have proven its case, and thus Mr. Rose never should have had to prove his actual innocence in the first place! Indeed, the Government's charges were first dismissed for lack of probable cause, and then, when other charges were brought *a year later* based on the same arrest, they were voluntarily dismissed by the Government because the Government knew it could not make its case. In fact, the Government's lack of a cognizable case is clear, in that at the hearing on the Plaintiff's Motion to Seal, the presiding Superior Court Judge, in issuing the denial of the Motion to Seal, stated unequivocally that there "is no question…[that] there is not proof beyond a reasonable doubt [to support a conviction]." *See* Fed Motion Exhibit B at p. 9 – 10 Trnscpt. pp 88 li 25 – 89 li 8).

BERNARD A. SOLNIK

ATTORNEY AT LAW
SUITE 640
11 N. WASHINGTON ST.
ROCKVILLE, MD 20850

TELEPHONE 301-294-9200

Id. at 2. Indeed, beyond those adverse impacts specifically enumerated by Mr. Rose, there likely have been and will be other adverse impacts on Mr. Rose's employment, personal relationships, and business relationships, of which he is not even aware, but that arose on account of his arrest record. Thus the averment of specific deprivations and interferences with Mr. Rose's life, liberty or property need not be made for the Complaint to stand muster.

4

11. In view of the Government never having had sufficient grounds to convict Mr. Rose, it is totally unfair and unconstitutional to now place the burden on Mr. Rose to prove a negative, in order to have the black mark of his arrest expunged. Even the Judge presiding over the motion to seal hearings characterized the nature of such hearings as not just unusual, but "unnatural." *See* Fed. Mot. Exhibit B at p. 11 (Tr. Pg. 90 li 1-3).

12. The Federal Defendants acknowledge that what constitutes sufficient due process turns on the nature of the particular situation. Fed. Motion at 15, citing *Gilbert v. Homar*. The Federal Defendants would prefer that this Court liken Mr. Rose's situation to a civil proceeding, requiring only a modest level of due process and justifying the burden of proof being placed on Mr. Rose. In reality, however, the nature of the present case is nowhere near the likes of a conventional civil matter. This is not a case where the Government is acting equivalently to a private party (e.g. as a purchaser of services). Rather, the matter at hand arises solely from the Government's application of its criminal powers. Indeed, the rule at issue is itself entitled **Criminal** Rule 118.

13. Clearly then, due process equivalent to the presumption of innocence ought to apply to all post arrest matters once the criminal case has been disposed of without a finding of guilt. Anything less invites wholesale abuse of the Government's arrest powers by incentivizing the use of arrests to accomplish what ought only be accomplished through a conviction or admission of guilt.

14. Looking beyond Mr. Rose's individual case for a moment, the bottom line is if the Government does not or cannot convert an arrest into a guilty plea or conviction, then, in view of the presumption of innocence afforded to U.S. citizens, and the significant negative impact that arrest records have in today's Information Society, the arresstee's Constitutional rights, including the rights to life, liberty, and property, *require* that the arrest be expunged from publicly available as well as confidential law enforcement records. The very fabric of our society requires this, otherwise we are merely encouraging and empowering our Government to use the mere threatened use of its arrest powers to intimidate us, and also to arrest our citizens at will, thereby imposing consequences that should only arise upon a conviction or guilty plea.

BERNARD A. SOLNIK
ATTORNEY AT LAW
SUITE 640
11 N. WASHINGTON ST.
ROCKVILLE, MD 20850

TELEPHONE 301-294-9200

WHEREFORE, Plaintiff respectfully requests that the Federal Defendants' motion be denied and for such other and further relief as Plaintiff's cause may require.

**Plaintiff requests an oral hearing.**

Respectfully submitted,

 /s/ Bernard Solnik
Bernard A. Solnik, Esq. (D.C. Bar #448453)
11 N. Washington Street, Suite 640
Rockville, MD 20850
Tel. 301-294-9200
Attorney for Plaintiff

BERNARD A. SOLNIK

ATTORNEY AT LAW
SUITE 640
11 N. WASHINGTON ST.
ROCKVILLE, MD 20850

TELEPHONE 301-294-9200

6